**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| **Corey Lee Butts,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:23cv1396 (PTG/IDD)** |
| | ) | |
| **Harold W. Clarke,** | ) | |
| **Respondent.** | ) | |

**<u>MEMORANDUM OPINION</u>**

Corey Lee Butts ("Petitioner" or "Mr. Butts"), a Virginia inmate proceeding *pro se*, has

filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. 1. Mr. Butts'

petition challenges the validity of the October 1, 2020 judgment order entered against Mr. Butts

by the Circuit Court of the City of Norfolk, Virginia for four convictions: (1) maliciously

discharging a firearm in an occupied building, (2) aggravated malicious wounding, (3) use of a

firearm in the commission of a felony, and (4) reckless handling of a firearm with a serious injury.

Dkt. 19-1 at 1. On April 26, 2024, Respondent filed a Rule 5 Answer and a Motion to Dismiss,

with a supporting brief and exhibits. Dkts. 17–19. Petitioner has responded. Dkts. 24, 26–28.[1]

The Court advised Petitioner of his rights in accordance with *Roseboro v. Garrison*, 528 F.2d 309

(4th Cir. 1975) on November 18, 2024, (Dkt. 29), and Petitioner has responded by filing an

affidavit and motion to discharge (Dkt. 30). Accordingly, this matter is now ripe for disposition.

For the reasons that follow, Respondent's Motion to Dismiss must be granted and the petition will

be dismissed with prejudice.

---

[1] Petitioner filed a Motion to Dismiss with Prejudice, (Dkt. 24); a Release of Lien on Real Property, (Dkt. 26); a Release of Personal Property from Escrow, (Dkt. 27); and a Petition for Addendum, (Dkt. 28).

## I. Procedural History

On October 1, 2019, a jury convicted Petitioner of maliciously shooting into an occupied building, in violation of Virginia Code § 18.2-279; aggravated malicious wounding, in violation of Virginia Code § 18.2-51; use of a firearm in the commission of a felony, in violation of Virginia Code § 18.2-53.1; and reckless handling of a firearm resulting in serious injury, in violation of Virginia Code § 18.2-56.1. Dkt. 19-1 at 1. On September 11, 2020, Petitioner was sentenced to a total of twenty-five years of imprisonment with three years suspended. *Id.* at 2. Judgment was entered on October 1, 2020. Dkt. 1 at 1.

Petitioner, by counsel, Catherine M. Paxon, filed a petition for appeal in the Virginia Court of Appeals, in accordance with *Anders v. California*, 386 U.S. 738 (1967), along with a motion to withdraw and a motion for an extension of time to allow Mr. Butts to file a supplemental petition for appeal. Dkt. 19-2 at 97–102. The petition raised five allegations of error.

I.      The trial court erred in finding the defendant competent to stand trial and in revoking his bond at the hearing on April 8, 2019.

II.      The trial court erred in refusing to strike the evidence as insufficient for a finding of guilt beyond a reasonable doubt.

III.      The trial court erred in refusing to dismiss the indictments after the defendant was denied a preliminary hearing.

IV.      The trial court erred in appointing counsel and in refusing to allow him to represent himself.

V.      The trial court erred in denying his motion to dismiss the indictments as being in violation of his speedy trial rights.

*Id.* at 78.[2] On October 5, 2021, the court granted the motion to withdraw, and denied the petition for appeal finding it "was wholly frivolous." *Id.* at 157. The order denying the petition summarized the evidence as follows:

---

[2] An amended petition for appeal was filed on March 12, 2021 that raised the same five assertions of error. *Id.* at 129.

Late in the evening on November 8, 2016, Ortina Bray and Richard Eley visited a Norfolk convenience store to purchase drinks. Bray admitted that he had used heroin earlier that day, but he testified that he had used heroin for nearly twenty years and that he was aware of his surroundings and was "functioning . . . very well." While Eley entered the store, Bray walked to the side of the building to use the bathroom. Upon returning to the front of the store, he saw appellant. Bray noted that he knew appellant "[f]rom the neighborhood." According to Bray, appellant walked across the street, turned, and began firing "a black, semi-automatic pistol." Bray stated that appellant fired approximately eight or nine shots. He recalled that appellant was wearing a large black coat, a black skull cap, "brownish pants," and black boots or shoes. Video footage from the front of the store captured the shooting and corroborated Bray's description of the shooter. It also depicted the shooter firing eight times in the direction of the convenience store.

After appellant left the scene, Bray entered the store to check on Eley. Eley was not injured, but Bray noted that "a young fellow" who was standing near the cash register was "holding his midsection." Two men escorted the injured male to the back of the store. Bray and Eley left the scene without speaking to the police. Bray explained that he did not want to talk to the police because he was "scared" of the consequences of "street law." He stressed that he related what he had seen to the police only after he was arrested in December 2016 because he hoped he might receive consideration for his testimony. However, he emphasized that he was not incarcerated at the time of trial and had no pending charges when he testified. Bray denied that he ever viewed any store surveillance footage, but he acknowledged that police may have shown him a still photograph of appellant standing with other men in front of the convenience store. At trial, he identified his friend Eley in an image extracted from interior surveillance footage. He also identified the individual who was shot.

Interior and exterior surveillance footage from the store at the time of the shooting was admitted into evidence. The interior footage depicted a man in a red checked jacket standing next to the cash register. As the man walked toward the store entrance, he grabbed his midsection as the other customers in the store scattered. The footage showed the man stumbling to the back of the store and collapsing.

Paramedic John Howard was dispatched to the store at 10:56 p.m. on November 8, 2016. Howard testified that a twenty-one-year-old male had been shot in the testicle and was the only person in the store who was injured. The victim was conscious and identified himself as Saquone Gray. Howard prepared a "Prehospital Care Report Summary" that recorded Gray's biographical information and the time, location, and nature of the dispatch. The summary contained a narrative of Gray's statement to Howard that he had been shot in the groin. The summary also reflected that Gray was transported to Sentara Norfolk General Hospital on Gresham Drive at 11:10 p.m. on November 8, 2016.

Gray did not appear at trial, but his Sentara Norfolk General Hospital records were admitted into evidence. The records reflected that he was admitted to the hospital at 11:17 p.m. on November 8, 2016 with a gunshot wound to the testicle. Medical

personnel determined the testicle had been shattered and removed it through a
procedure known as an orchiectomy.

On November 10, 2016, a robbery alarm was activated at the same convenience
store where Gray had been wounded. Officer Ryan responded to the store shortly
after 1:30 pm. Ryan noted that he did not activate his siren as he approached the
store to avoid alerting any suspects at the scene. A black male dressed in a black
skull cap, black trench coat, and black shoes was standing outside the store when
Ryan arrived. Upon seeing Ryan, the male ran from the scene. The store clerk
exited the store and gestured in the male's direction. Ryan pursued the male on
foot and apprehended him. Appellant was identified as the individual whom Ryan
apprehended. Videos and photos of the shooter outside the convenience store on
the night of November 8, 2016 were admitted into evidence, as were video footage
and a photo of appellant outside the convenience store shortly before Ryan's arrival
on the afternoon of November 10, 2016.

*Id.* at 161–63 (footnote omitted). The court denied Mr. Butts' *pro se* petition for rehearing on

October 27, 2021. *Id.* at 170–75. Mr. Butts, proceeding *pro se*, filed a notice of appeal to the

Virginia Supreme Court, but he did not perfect that appeal. *Id.* at 179–81.[3]

Mr. Butts, proceeding *pro se*, executed a state petition for a writ of habeas corpus on May

1, 2023, (Dkt. 19–3 at 2), and filed it in the Virginia Supreme Court. *Butts v. Clarke*, Record No.

230362 ("Hab. at __"). The petition raised one claim:

"I declare 'For the Record' that I am: Corey Lee Butts-Bey, A Moorish-American;
a Natural Person, in Propria Persona; and not Pro Se. The court/prosecution has
not proven jurisdiction, and or entered into evidence a tangible certified Delegation
of Authority order. The prosecution has not proven beyond a reasonable doubt the
Rule of Corpus Delecti. There is no "victim" or "body" in this case.

*Id.* at 5. The petition was dismissed as untimely under Virginia Code § 8.01-654(A)(2) because it

was not filed within one year of the conclusion of his direct appeal on November 29, 2021. *Id.* at

---

[3] The notice of appeal was postmarked December 22, 2021 and filed on December 27, 2021. *Id.*;
*see* Va. Sup. Ct. R. 5:14 ("No appeal from a judgment of the Court of Appeals which is subject to
appeal to this Court will be allowed unless, within 30 days after entry of final judgment or order
denying a timely petition for rehearing, a notice of appeal is filed with the clerk of the Court of
Appeals, as provided for in Rule 5A:1."); *see also* Va. Sup. Ct. R. 5:17 (a petition for appeal to the
Virginia Supreme Court must be filed "in an appeal from the Court of Appeals, within 30 days
after entry of the judgment appealed from or a denial of a timely petition for rehearing. However,
an extension may be granted, in the discretion of this Court, on motion for good cause shown.").

20. The court also held that "petitioner's argument that he is a 'Moorish-American' and a 'Natural Person' does not undermine the circuit court's jurisdiction over his case such that the statute of limitations would not apply." *Id.* (citing Va. Code § 17.1-513).[4]

On August 22, 2023,[5] Mr. Butts executed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, and filed it in this Court. The petition raises three grounds for relief:

1) "I declare 'For the Record' that I Am: Corey Lee Butts-Bey, A Moorish-American; A Natural Person, In 'Proper Persona' and not 'Pro se.'"

2) "The Court/Location has not Proven Jurisdiction."

3) "The Officers of the court has not Proven beyond A Reasonable doubt the Rule of Corpus delicti. There is no 'victim' or 'body' in this case."

(Dkt. 1 at 5, 7–8). The respondent argues that Mr. Butts' petition is untimely. (Dkt. 19 at 2–4).

## II. Statute of Limitations

Under the Anti-terrorism Effective Death Penalty Act ("AEDPA"), a petition for a writ of habeas corpus must be dismissed if filed later than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D). To be properly filed, the petition must be delivered in compliance with the applicable laws and rules governing filings, including format and time requirements. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). The United States

---

[4] In Virginia, circuit courts "have original jurisdiction of all indictments for felonies and of presentments, informations and indictments for misdemeanors." Va. Code Ann. § 17.1-513; *see also id.* ("Upon certification by the district court of any felony charge and ancillary misdemeanor charge or when an appeal of a conviction of an offense in district court is noted, jurisdiction as to such charges shall vest in the circuit court.").

[5] The federal petition was filed on August 28, 2023, and received in the mail room on August 25, 2023. (Dkt. 1 at 1, 17). The Court uses August 22, 2023 because that is the earliest the petition could have been delivered to the prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (a pleading is filed at the time a prisoner delivers it to the prison authorities for forwarding to the court clerk).

Supreme Court has emphasized that an untimely state petition is not properly filed. *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005).

In this case, Mr. Butt's convictions became final on November 26, 2021, the last day on which he could have sought an appeal to the Virginia Supreme Court from the Virginia Court of Appeals' denial of his petition for rehearing on October 27, 2021.[6] Hence, his federal statute of limitations lapsed on Monday, November 28, 2022.[7] He did not execute his federal habeas petition until August 22, 2023, over eight months after the statute of limitations lapsed. Therefore, absent statutory or equitable tolling, his federal petition is time-barred.

*A. Statutory Tolling*

Under AEDPA, a state prisoner must file his petition for a writ of habeas corpus within one year of the completion of the state court direct review process. 28 U.S.C. § 2244(d)(1)(A). In calculating the one-year period, the Court must exclude the time during which any properly filed state collateral proceedings were pending. *See* 28 U.S.C. § 2244(d)(2); *see also Pace*, 544 U.S. at 417 (determining that the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts). Here, after the

---

[6] In calculating when direct review ends, the 90-day period for filing an application for writ of certiorari with the United States Supreme Court is not included when a habeas petitioner does not properly maintain a direct appeal through the highest available state court. *Miller v. Hooks*, 749 F. App'x 154, 159 (4th Cir. 2018) ("a state conviction for a petitioner who does not appeal to the state court of last resort becomes final when the time for seeking further review in state court expires") (citing *Gonzalez v. Thaler*, 565 U.S. 134, 137 (2012) (if a state prisoner "does not seek review in a State's highest court, the judgment becomes 'final' on the date that the time for seeking review expires.")); *id.* at 150 (holding that if a petitioner does "not appeal to the State's highest court, his judgment became final when his time for seeking review with the State's highest court expired"); *accord Riddle v. Kemna*, 523 F.3d 850, 855 (8th Cir. 2008) (same); *Hemmerle v. Arizona*, 495 F.3d 1069, 1074 (9th Cir. 2007) (same); *Pugh v. Smith*, 465 F.3d 1295, 1299–300 (11th Cir. 2006) (same).

[7] Because one year fell on a weekend, Saturday, November 26, 2022, the statute of limitations lapsed on Monday, November 28, 2022.

6

statute of limitations began to run on November 26, 2021, the only collateral proceeding Mr. Butts

filed was his state habeas petition.  The state petition was filed, at the earliest, on May 1, 2023.

(Dkt. 19-3 at 2).  At that time, the statute of limitations had already lapsed.  *See Vroman v. Brigano*,

346 F.3d 598, 602 (6th Cir. 2003) ("The tolling provision does not, however, 'revive' the

limitations period (*i.e.* restart the clock at zero); it can only serve to pause a clock that has not yet

fully run.  Once the limitations period is expired, collateral petitions can no longer serve to avoid

a statute of limitations."); *Moore v. Crosby*, 321 F.3d 1377, 1381 (11th Cir. 2003) ("While a

'properly filed' application for post-conviction relief tolls the statute of limitations, it does not

reset or restart the statute of limitations once the limitations period has expired.  In other words,

the tolling provision does not operate to revive the one-year limitations period if such period has

expired."); *Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001) (where a state court application

for post-conviction relief is filed after the one-year statute of limitations has expired, it does not

toll the statute because no time remains to be tolled).  Accordingly, there is no basis for statutory

tolling in this case.[8]

_____

[8] Mr. Butts, *pro se,* filed a petition for a writ of mandamus in the circuit court on August 25, 2020.
*Corey Lee Butts v. Commonwealth of Va., et al.,* Case No. CL20-8477 (Norfolk Cir. Ct.).  The
petition sought dismissal of the criminal proceedings alleging his "speedy trial" rights had been
violated, he had been denied the "right to face his accusers and witnesses, inadmissible evidence,
improper witnesses, Constitutional infirmities, and Technicalities." Rec. at 1–2. The petition was
dismissed with prejudice on November 17, 2020, (*id.* at 27), and the Virginia Supreme Court
refused his appeal on May 4, 2021. *See* Virginia's Judicial System, Case Status and Information,
https://ebrief.courts.state.va.us/caseinfo/home.html    (Virgina    Supreme    Court    Tab,
Appellant/Petitioner, search "Butts, Corey", click inactive) (last viewed Dec. 11, 2024) (Record
No. 201491). *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("most
frequent use of judicial notice of ascertainable facts is in noticing the content of court records")
(collecting cases); *see, e.g., Lynch v. Leis*, 382 F.3d 642, 647 & n.5 (6th Cir. 2004) (taking judicial
notice of state court records available to public online).  He also filed a petition for a writ of
prohibition in the Virginia Supreme Court that was refused on September 2, 2020.  *Id.* (Record
No. 200166).  The petitions for writs for prohibition and mandamus could not have tolled the
federal statute of limitations because each proceeding concluded before the federal statute of
limitations began to run on November 26, 2021.

*B. Equitable Tolling*

To qualify for equitable tolling, a petitioner must demonstrate that (1) he had been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way that prevented timely filing. *Pace*, 544 U.S. at 418. A petitioner generally is obliged to specify the steps he took in diligently pursuing his federal claim, *Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001), and a petitioner asserting equitable tolling "bears a strong burden to show specific facts" that demonstrate fulfillment of both elements of the test. *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (quoting *Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008)). "Equitable tolling is an exceedingly narrow window of relief." *Finch v. Miller*, 491 F.3d 424, 427–28 (8th Cir. 2007) (citation omitted). Indeed, equitable tolling is available only in "rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Green v. Johnson*, 515 F.3d 290, 304 (4th Cir. 2008).

To establish entitlement to equitable tolling, the petitioner must "demonstrate a causal relationship between the extraordinary circumstance on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the circumstances." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000).

Here, Mr. Butts argues in his petition that the untimely filing is the fault of his appellate attorney, Catherine M. Paxon. His conduct, however, does not establish diligence because he admits he wrote letters to the Virginia State Bar ("Bar") complaining about Paxon because he had no attorney when she was allowed to withdraw as Mr. Butts' counsel by the Virginia Court of Appeals. Mr. Butts attached a Bar complaint dated August 29, 2022 to his federal petition

8

complaining about the Paxon's alleged abandonment, (Dkt. 1-1 at 1), which was well before the lapse of the federal statute of limitations.[9] Mr. Butts complained to the Bar that he had not been appointed an attorney after the Virginia Court of Appeals allowed Paxon to withdraw. *Id.* He also complained to the Judicial Inquiry and Review Commission ("JIRC") as well by letter dated August 29, 2022. Dkt. 11 at 3. JIRC counsel responded on September 6, 2022 and advised Mr. Butts that his "remedy, if there is one, is to litigate this matter in the courts," and that JIRC did "not review the rulings or decision of the courts." *Id.*

The record establishes that Paxon served Mr. Butts with notice that she was seeking to withdraw as his attorney pursuant to *Anders* because she believed that his appeal was frivolous; that he was provided an opportunity to file a supplemental petition for appeal; that he was notified of the decision on his petition for appeal and that his attorney was allowed to withdraw; that he perfected his petition for rehearing; and that he filed a notice of appeal. Dkt. 19-2 at 97–181. The record also establishes that Petitioner had a copy of his trial transcripts and other relevant records by February 19, 2021. *Id.* at 112–19.

Lastly, Petitioner's claims relate to matters that occurred at trial. Mr. Butts had the records necessary to pursue relief before the Virginia Court of Appeals rendered its decision. He has failed to establish diligence, and he has not demonstrated that anyone prevented him from filing for relief in a timely fashion in either state or federal court. To the contrary, Mr. Butts pursued various non-judicial complaints with the Bar and the JIRC that did not prevent him from pursuing claims in a direct appeal to the Virginia Supreme Court. Likewise, his various complaints with the Bar and

---

[9] Mr. Butts filed a motion for appointment of counsel on June 15, 2022 in the Virginia Supreme Court, which was deemed moot because it was untimely. (Dkt. 11 at 1).

JIRC did not prevent him from pursuing claims against his counsel in a timely state habeas petition or a timely federal habeas petition.[10]

### C. Actual Innocence

Mr. Butts also seems to be asserting he is innocent for legal reasons—specifically, that the state court did not have jurisdiction over him and the victim did not testify. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (explaining that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations"). To establish actual innocence, "[new] evidence must establish sufficient doubt about [a petitioner's] guilt to justify the conclusion that his [incarceration] would be a miscarriage of justice *unless* his conviction was the product of a fair trial." *Schlup v. Delo*, 513 U.S. 298, 316 (1995). A gateway claim requires a petitioner to present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324.[11]   Further,

---

[10] The records of this Court also establish that Mr. Butts filed several § 1983 civil actions related to his trial proceedings. For example, he filed a civil complaint, pursuant to 42 U.S.C. § 1983, naming the prosecutor and his retained trial counsel as defendants. *Butts v. Beye, et al.*, No. 1:20-cv-939-TSE-MSN (E.D. Va. Oct. 10, 2020), *appeal dismissed*, No. 20-7605 (4th Cir. Dec. 31, 2020). An eighteen-page portion of that complaint sets forth, in detail, a long list of complaints Mr. Butts had with regard to his trial, the trial judge, the prosecutor, and his trial counsel—which included: due process violations; statutory speedy rights violations; failure of counsel to file a motion to suppress; prosecutorial misconduct; judicial impartiality; violation of his right to confront his accuser; improper admission of evidence; ineffective assistance of counsel; and that he was denied his right to counsel (mistrial). *Id.* at Dkt. 1 at 4–22. The § 1983 complaint was filed on August 14, 2020 and dismissed, with prejudice, on October 1, 2020. *Id.* at Dkt. 7. Mr. Butts was convicted on October 1, 2019 by the jury and was aware of not only what had occurred at the trial—as evidenced by his § 1983—but his § 1983 complaint demonstrates that he was able to articulate his concern about alleged trial errors and the alleged ineffective assistance of trial counsel before he was sentenced on September 11, 2020.

[11] To the extent Mr. Butts is asserting a free-standing claim of actual innocence, "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993); *see McQuiggin*, 569 U.S. at 392 ("We have not

"[t]he miscarriage of justice exception is concerned with actual as compared to legal innocence," and "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial. Given the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citations omitted).

As an initial matter, neither Mr. Butts' alleged citizenship nor heritage constitutes an element of the state court's jurisdiction in a criminal prosecution. Mr. Butt's legal innocence argument and his federal habeas claims are premised on his claim to be exempt from criminal prosecution by Virginia based upon his alleged status as a Moorish American, (Dkt. 1-1 at 2; Hab. at 4), and that the victim did not testify at trial.[12] The Fourth Circuit has rejected the assertion that a person who claims status as a Moorish American is not subject to criminal prosecution. *See United States v. White*, 480 F. App'x 193, 194 (4th Cir. 2012) (rejecting a claim that a federal court lacked jurisdiction over a Moorish American because "[n]either the citizenship nor the heritage of a defendant constitutes a key ingredient to a district court's jurisdiction in criminal prosecutions"); *accord Kerr v. Hedrick*, 89 F. App'x 962, 964 (6th Cir. 2004) (rejecting as "without merit" the

---

resolved whether a prisoner may be entitled to habeas relief based on a free-standing claim of actual innocence."). In addition, as noted below, he does not meet the gateway standard, and therefore he has also failed to meet "any hypothetical freestanding actual innocence claim." *Bruce v. Warden Lewisburg USP*, 868 F.3d 170, 184 (3d Cir. 2017) (citing *Albrecht v. Horn*, 485 F.3d 103, 126 (3d Cir. 2007)); *see also House v. Bell*, 547 U.S. 518, 555 (2006) (noting that a freestanding actual innocence claim would require "more convincing proof of innocence" than that needed to meet the gateway standard).

[12] Mr. Butts reiterated these arguments in his response to the motion to dismiss. Dkt. 30. He argued the court had no subject matter or *in personam* jurisdiction over him, based upon his status as a "flesh-and-blood man," secured party creditor, and the victim did not testify at trial or file a complaint. *Id.* at 3. His lack of jurisdiction argument based on him being a "flesh-and-blood human being and secured party creditor" have no arguable legal basis and are patently frivolous. *Henry v. Fernandez-Rundle*, 773 F. App'x 596, 597 (11th Cir. 2019) (citing *United States v. Benabe*, 654 F.3d 753, 761-62, 764, 767 (7th Cir. 2011)).

petitioner's claim that he was exempt from punishment for his federal crimes because his rights derived exclusively from the Moorish Science Temple of America). "Regardless of an individual's claimed status of descent, be it as a 'sovereign citizen,' a 'secured-party creditor,' or a 'flesh-and-blood human being,' that person is not beyond the jurisdiction of the courts. *These theories should be rejected summarily, however they are presented.*" *Benabe*, 654 F.3d at 767 (emphasis added); *see United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990) ("sovereign citizen" defense to prosecution has "no conceivable validity in American law"). The Virginia Supreme Court expressly rejected this argument in the state habeas citing Virginia Code § 17.1-513. Dkt. 19-3 at 20. That statute provides that all circuit courts "have original jurisdiction of all indictments for felonies and of presentments, informations and indictments for misdemeanors." Va. Code § 17.1-513.[13] Federal courts are bound by a state supreme court's interpretation of state law. *See Johnson v. Fankell*, 520 U.S. 911, 916 (1997) ("[T]he interpretation of [state law] by the [States' Supreme Court] would be binding on federal courts. Neither this Court nor any other federal tribunal has any authority to place a construction on [state law] different from the one rendered by the highest court of the State."); *see also Johnson v. United States*, 559 U.S. 133, 138 (2010) (federal courts are bound by the state supreme court's interpretation of state law, including determination of the elements of the offense). Mr. Butts arguments do not warrant tolling.

To the extent Mr. Butts challenges the sufficiency of the evidence, a federal habeas petition warrants relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The relevant question in conducting such a review is whether, "after viewing the

---

[13] *See also* Va. Code § 19.2-239 ("[t]he circuit courts, except where otherwise provided, shall have exclusive original jurisdiction for the trial of all presentments, indictments and informations for offenses committed within their respective circuits.").

evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citation omitted). A federal court sitting in habeas has "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (citation omitted); *see also United States v. Arrington*, 719 F.2d 701, 704 (4th Cir. 1983) (citations omitted) (holding that federal habeas courts, when making a sufficiency of the evidence determination, do not weigh the evidence or review the credibility of witnesses). Thus, when reviewing a federal habeas claim, federal courts defer to the state court's factual findings, which are presumed to be correct. 28 U.S.C. § 2254(d); *Jackson*, 443 U.S. at 326 ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.").

The evidence at trial demonstrated that Mr. Butts' convictions are not a miscarriage of justice. The Virginia Court of Appeals found that even though the victim did not testify that the evidence admitted at trial was sufficient to sustain Mr. Butts' convictions. *See, supra* at 2–4.

> Here, the jury was presented with videos and photographs of the shooting on the night of November 8, 2016. The exterior images depicted a black male dressed in a long dark coat, a dark skull cap, and black shoes firing at the convenience store. The interior footage depicted the store occupants scattering and one of the customers, later identified as Gray, clutching his midsection and stumbling to the back of the store. Although Bray did not immediately identify appellant as the shooter, his description of appellant on the night of the shooting matched that of the shooter, as well as the description of appellant when he was apprehended outside of the store two days later. Based on the photographs and footage from November 8, 2016 and November 10, 2016, a rational fact finder could conclude that Bray's identification was credible. In addition to the photographs and footage, appellant's flight from the convenience store on November 10, 2016 in response to the arrival of the police provided the jury with evidence of his guilt. *See Speller v. Commonwealth*, 69 Va. App. 378, 388 (2018). Further, although Gray did not testify, he was the only person in the store wounded during the incident, and his identity and the location of his gunshot wound were documented by the paramedic

and hospital records. Thus, the evidence supported a rational finding that Bray [sic] was wounded as a result of the November 8, 2016 shooting and that appellant was the shooter.

Dkt. 19-2 at 163–64. The record establishes that equitable tolling is not warranted in this case and the petition will be dismissed as untimely.

## IV. Certificate of Appealability

According to Rule 11(a) of the Rules Governing Section 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." R. 11(a), Rules Governing Section 2254 Cases U.S. District Courts; *see also* 28 U.S.C. § 2253(c)(1)(A) (prohibiting an appeal to the respective court of appeals from a final order concerning a habeas corpus petition "[u]nless a circuit justice or judge issues a certificate of appealability"). A certificate of appealability ("COA") will not issue absent "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

Where a district court dismisses a petition solely based on procedural grounds, and does not address the underlying constitutional claims, *Slack* instructs the court to issue a COA only when the petitioner demonstrates that "jurists of reason" would find both the petition's "claim of the denial of a constitutional right" and the district court's dispositive procedural ruling "debatable[.]" *Id.* at 484. As to whether the procedural ruling is "debatable[,]" *Slack* further advises that when the procedural bar present is "plain" and "the district court is correct to invoke it to dispose of the case," "jurists of reason" could not find "that the district court erred in

14

dismissing the petition or that the petitioner should be allowed to proceed further.  In such a circumstance, no appeal would be warranted." *Id.*

Here, Mr. Butts' petition will be dismissed because he failed to file his federal petition for a writ of habeas corpus within the one-year statute of limitations permitted under 28 U.S.C. § 2244(d)(1).  Where such "a plain procedural bar is present[,]" this Court finds that "jurists of reason" would not and could not "find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.  Thus, this Court will not issue a COA to Mr. Butts.

Mr. Butts may, however, seek a COA from the United States Court of Appeals for the Fourth Circuit.  Where a district court denies a COA, the petitioner "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." R. 11(a), Rules Governing Section 2254 Cases U.S. District Courts.

## V. Conclusion

For the foregoing reasons, Respondent's Motion to Dismiss (Dkt. 17) will be granted, and Mr. Butts' motion to dismiss with prejudice (Dkt. 24) and motion to discharge (Dkt. 30), will be denied.  An appropriate Order and judgment shall issue.

Entered this _3rd_ day of January, 2025.
Alexandria, Virginia

_____
Patricia Tolliver Giles
United States District Judge